UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KYLIE W.,[1]                               )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )          No. 1:25-cv-725-MJD-JPH
                                           )
FRANK BISIGNANO,                           )
                                           )
                                           )
                    Defendant.             )

**ENTRY ON JUDICIAL REVIEW**

Claimant Kylie W. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382.  For

the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.  Background**

Claimant applied for SSI in March 2020, alleging an onset of disability as of November

16, 2017.  [Dkt. 8-5 at 2.]  Claimant's application was denied initially and again upon

reconsideration, and a hearing was held before Administrative Law Judge Shelette Veal on

December 7, 2021.  [Dkt. 8-2 at 34.]  On December 28, 2021, ALJ Veal issued her determination

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied Claimant's request for review on September 12, 2022. *Id.* at 2.  That decision was appealed and, on joint motion of the parties, the court remanded the case to the Commissioner on April 27, 2023.  [Dkt. 8-16 at 33.]  A hearing was then held before ALJ Tina Mengesha-Brown ("the ALJ") on May 9, 2024.  [Dkt. 8-15 at 39.]  The ALJ issued her decision denying Claimant's application on May 31, 2024.  *Id.* at 12.  The Appeal Council denied review on February 20, 2025.  [Dkt. 8-15 at 2.]  Claimant then timely filed her Complaint on April 16, 2025, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c.  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III. ALJ Decision

ALJ Mengesha-Brown first determined that Claimant had not engaged in substantial gainful activity since the date the application was filed, March 17, 2020. [Dkt. 8-15 at 14.] At step two, the ALJ found that Claimant had the following severe impairments: "lupus/systemic

3

lupus erythematosus ("SLE")/Sjogren's syndrome/Sicca; fibromyalgia; osteopenia/osteoporosis; seizure disorder; anxiety; depression." *Id.*  At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 15. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a range of sedentary work as defined in 20 CFR 416.967(a) such that she can lift and carry up to 10 pounds occasionally, can stand and walk with normal breaks for about 2 hours in an 8-hour workday, and can sit with normal breaks for about 6 hours in an 8-hour workday. She can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can occasionally stoop, kneel, and crouch, but never crawl. She can frequently bilaterally reach, handle, and finger, and can push/pull a maximum of 10 pounds with the upper and lower extremities. She must avoid unprotected heights and workplace hazards, cannot work with vibrations, and requires a work environment with no more than moderate noise. She can have no more than moderate exposure to heat, cold, or humidity, and cannot work in a work environment with extremely bright lighting that is brighter than a normal office environment. She can perform simple, routine tasks with no production pace work, can have occasional interaction with supervisors and coworkers, but none with the general public, and can tolerate occasional changes to a routine work setting.

*Id.* at 17.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 29.  At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 30.  Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 31.

## IV.  Discussion

Claimant suffers from systemic lupus erythematosus, an immune system disorder.  As Claimant notes in her brief, Listing 14.00 expressly recognizes that "pain, severe fatigue, and malaise may be important factors" when considering the RFC of a claimant with an immune

system disorder.  Claimant alleges that the ALJ failed to properly consider the effect of severe fatigue on her ability to work.  The Court agrees.

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process.  First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3.  Here, the ALJ found that there were such impairments.  [Dkt. 8-15 at 18-19.]  Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  SSR 16-3p at *3.  The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled.  Id. at *4-5.  The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment.  Id. at *7-8.

The ALJ noted in her decision that Claimant testified that she had "severe fatigue," such that "in the days after she exerts herself, she is down for several days."  [Dkt. 8-15 at 18.]  In fact, the ALJ found the opinion of Dr. Corcoran, one of the state agency medical consultants, to be "not persuasive," in part because it did not "give proper weight to claimant's reporting of limitations," including her testimony "that she has pain and fatigue with joint pain and neck/back pain [and] that there were days where she could not get up and down stairs."  Id. at 27.  If the ALJ had fully credited Claimant's testimony about these symptoms—as the above-quoted statement suggests she did—a finding of disability would almost certainly have been required.

However, the ALJ apparently did not fully credit the Claimant's testimony, as she stated the following elsewhere in her decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 18-19.

The Court has scoured the ALJ's opinion searching for any reason or explanation for the ALJ's implicit determination that Claimant's testimony regarding her severe fatigue was not entirely consistent with the evidence of record. There is none. The ALJ gives a lengthy summary of the evidence, finds that Claimant's seizures and mental impairments appear to be controlled, and then concludes that the evidence overall supports the ALJ's RFC determination, with no explanation of how the RFC determination is consistent with Claimant's allegations of severe fatigue or explanation that the ALJ did not credit those allegations. A summary of the evidence, without more, is not "sound reasoning" and does not satisfy the requirement that the ALJ provide "an adequate discussion of the issues." *Moy*, 142 F.4th at 552.

This error is compounded by the fact that, in her summary of Claimant's medical records, the ALJ virtually ignores the many times that complaints of fatigue were documented, mentioning only one of them. *See* Dkt. 8-15 at 20 (noting that "[i]n a telemed rheumatology exam with Dr. Thomas in early July 2020, she reported being outside more and having flares of rashes and fatigue with achy joints"). In fact, fatigue is noted repeatedly and consistently throughout Claimant's records. *See* [Dkt. 8-7 at 55 (March 10, 2020, visit noting malaise/fatigue); Dkt. 8-12 at 103 (April 13, 2020, visit noting same); Dkt. 8-8 at 28 (June 15,

2020, visit noting chronic malaise/fatigue); Dkt. 8-12 at 118 (September 15, 2020, visit noting malaise/fatigue); *id.* at 125 (December 1, 2020, visit noting same); Dkt. 8-14 at 116 (October 8, 2021, visit noting poor energy level and motivation); *id.* at 122 (October 28, 2021, visit noting same); Dkt. 8-20 at 157 (November 18, 2021, visit noting malaise/fatigue); *id.* at 348 (November 19, 2021, visit noting that claimant "feels like lupus causes such severe fatigue she has no desire to go do things"); *id.* at 165 (February 24, 2022, visit noting malaise/fatigue); *id.* at 355 (March 16, 2022, visit noting "[e]nergy level continues to be low related to health issues); *id.* at 174 (April 20, 2022, visit noting same); *id.* at 185 (May 24, 2022, visit noting same); *id.* at 6 (July 19, 2022, visit noting fatigue); *id.* at 196 (August 25, 2022, visit noting same); *id.* at 207 (December 1, 2022, visit noting same); *id.* at 372 (December 29, 2022, visit noting "[e]nergy level and motivation are still low"); Dkt. 8-21 at 2, 11 (April 28, 2023, visit noting claimant is "feeling more fatigued lately" and diagnosing chronic fatigue); *id.* at 81 (May 24, 2023, visit noting "[e]nergy level and motivation are very low"); *id.* at 20 (July 28, 2023, visit noting malaise/ fatigue); *id.* at 86 (October 24, 2023, visit noting "[e]nergy level and motivation are very low"); *id.* at 31 (October 27, 2023, visit noting same); *id.* at 91 (December 5, 2023, visit noting "[e]nergy level and motivation are still low); *id.* at 42 (February 1, 2024, visit noting same).  The ALJ cited to most of these visit notes in her summary of the evidence but omitted the mentions of fatigue.

When asked at the hearing why she was unable to work, Claimant stated:  "my lupus causes me to be in an extreme amount of pain and fatigue, and my depression and anxiety has been pretty debilitating.  I don't really leave the house." [Dkt. 8-15 at 44.]  She further testified that "the fatigue is really bad" and that "[i]f I actually do have to go do something, then the days following that activity, I'm usually down on the couch."  *Id.* at 46, 47.  Given that Claimant's

claim of disability was based largely on her alleged severe fatigue, Claimant's records are replete with complaints of fatigue, and Claimant suffers from an immune system disorder that the Listings recognize can cause disabling fatigue, the ALJ was required to do more than just acknowledge that Claimant complained of fatigue. Rather, the ALJ was required to either explain how her RFC finding was consistent with the complaints of fatigue or explain why she did not credit those complaints in arriving at Claimant's RFC and cite to substantial evidence to support that finding. Because the ALJ failed to do so, this case must be remanded.[2]

> One final note. The Commissioner makes the following argument:

> Plaintiff proposes no apparent functional work limitations that the ALJ overlooked or should have imposed in relation to her fatigue. In *Gedatus v. Saul*, the Seventh Circuit rejected a claimant's challenge to the ALJ's RFC assessment because "a fundamental problem is that she offered no opinion from any doctor to set . . . any other limits, greater than those the ALJ set." *Gedatus*, 994 F.3d [893, 904 (7th Cir. 2021)]. Courts in this district have held similarly: "Plaintiffs bear the burden of producing medical evidence establishing limitations beyond those the ALJ found. . . . Terry has identified no evidence, beyond his own subjective complaints, to establish that he experienced greater functional loss than the ALJ determined." *Terry W. v. Kijakazi*, No. 1:21-cv-02098-SEB-DML, 2022 WL 4232966, at *4 (S.D. Ind. Sept. 14, 2022) (internal quotation marks and citation omitted).

[Dkt. 17 at 7.] The Seventh Circuit has addressed, and rejected, the Commissioner's suggestion that any error by an ALJ is excused if the ALJ found the claimant to be at least as limited as the medical opinions of record:

> As the Commissioner points out, no doctor has opined that Hill has more limitations than the ALJ incorporated into her assessment of Hill's residual functional capacity. **But Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.** *See Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin,* 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

---

[2] In light of this finding, the Court need not address Claimant's other arguments.

*Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (emphasis added).  Here, the ALJ articulated no

reason for rejecting Claimant's testimony that she is more limited by her fatigue than the ALJ

found her to be.  This is reversible error.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND**

**REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  11 MAY 2026

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.